**URBAN RENEWAL AGENCY OF the CITY OF AUSTIN, Appellant,**

v.

**GEORGETOWN SAVINGS AND LOAN AS-SOCIATION et al., Appellees.**

No. 12118.

Court of Civil Appeals of Texas, Austin.

April 24, 1974.

Rehearing Denied May 15, 1974.

**420**

———◆———

Paul D. Jones, Johnson, Jones & Sheppard, Austin, for appellant.

Douglass D. Hearne, Stayton, Maloney, Black, Hearne & Babb, Austin, for appellees.

PHILLIPS, Chief Justice.

The Urban Renewal Agency of the City of Austin sought to condemn a tract of land owned by Georgetown Savings and Loan Association subject to a contract of sale with Pat Cain and Wayne D. Rodgers. The trial court rendered judgment vesting title to the property in the Urban Renewal Agency (hereinafter referred to as the Agency), and awarded the appellees $31,500 based on the jury's answer to special issues. The appellant Agency has duly perfected its appeal to this Court. We reverse the judgment and remand the cause for a new trial.

I.

Appellant is before us on twenty-six points of error which present three main questions.

The first question is whether the court erred in admitting the testimony of appellees' witness concerning the proposed uses of the subject property which were prohibited by a building code of the City of Austin. We hold that the admission of the testimony under the circumstances, hereinafter described, was error.

The lot in question has a total of 8832 square feet of which nearly 7300 square feet, or approximately 82% of the area, is within the bed and banks of Waller Creek. The entire width of Waller Creek crosses this property diagonally from the northwest to the southeast, and the south boundary line of this property is within the banks of Waller Creek. This lot is located at the northwest corner of East 14th and Neches Streets. Where the south property line of the lot coincides with the north right-of-way line of East 14th Street, the middle of Waller Creek is about 16 feet below the street level and the traffic level of a concrete bridge traversing the creek. The only access the property has to any street is a distance of approximately 72 feet along unpaved Neches Street extending southerly from the northeast corner of the lot. At the time of taking a frame structure was situated on the 1500 square feet of the property not within the creek, which, according to both appraisers for the appellees, had no value. Neches Street, along the east side of the property, is unpaved, uncurbed, and dead-ends at East 14th Street where it encounters Waller Creek. The property was zoned for "B" Residence use.

Appellees' case was centered on the proposition that the entire tract was suitable for use and development as an office site. Throughout the presentation of appellees' case, this was the assumption made, and it was on the basis of this assumption that appellees' witnesses testified as to the market value of the tract.

■ Section 29–2 of the Austin City Code of 1967 states: "It shall be unlawful for any person to place, or cause to be placed, any obstruction of any kind in any creek, branch, drainway or watercourse within the city." Although this restriction is not a zoning ordinance, it falls within the same general type of regulation as zoning and, as such, is unquestionably an exercise of the police power of the City. Consequently, the appellees were under the burden of proving the *probability* that the restriction would be lifted by the City and that they would be allowed to place the building, or a portion thereof, in the creek

bed. City of Houston v. Johnny Frank's Auto Parts Co., 480 S.W.2d 774 (Tex.Civ. App.1972, writ ref. n.r.e.); City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954). The record discloses that the appellees offered no evidence to show a reasonable probability that the construction restrictions imposed by Section 29–2 of the Austin City Code of 1967 would be changed to accommodate use of the creek bed for an office building.

## II.

The second question presented by this appeal is whether the court erred in admitting preliminary drawings of a proposed office building for the lot where the drawings were objected to as being purely speculative. We hold that the admission of the drawings under the hereinafter described circumstances was error.

■ Appellees' witness Stahl, an architect, was allowed to testify at length concerning plans for an office structure to be built on piers placed in the bed of the creek. However, he testified that nothing had been done to develop the property except the preparation of these preliminary rought sketches which were shown to the jury as evidence that the property was suitable for the proposed office building. The error of admitting these sketches to show the highest and best use of the property is in the fact that the feasibility of using the creek bed for the building, or any part thereof, was not reasonably proved. The evidence discloses that the Director of the City Department of Engineering, whose duty it is to review plans for construction around waterways, testified that the City Code, Section 29–2, was intended not only to protect occupants of the property in question, but also those upstream, downstream, and in the area that might be affected by any change in the flow of water along the channel of the creek. The

witness testified that to make any alteration in a creek of the magnitude of Waller Creek, a detailed study by a professional engineer competent to practice in the field of hydrology must be submitted and approved by the City. Consequently, under the present state of the record, it has not been shown from an engineering view point that it is feasible to erect an office building on the site. The proposed office building then falls under the "wholly speculative nature" of the evidence proscribed in Melton v. State, 395 S.W.2d 426 (Tex. Civ.App.1965, writ ref. n.r.e.).

## III.

Appellant's remaining points concern the sales of nine properties admitted in evidence, over objections, as being comparable to the lot before us. In view of a new trial, we deem it necessary to comment on these points.

■ While the admission into evidence of sales of comparable property is within the discretion of the trial judge,[1] such evidence must be a property which is in fact *similar* to the property to which it is being compared.[2] We concur in appellant's objections to the admission into evidence of many of these properties as comparable sales.

■ Although we realize that sales of creek bottom properties may be infrequent and therefore not easily produced as evidence, the trial court seems to have proceeded on the theory that the principal requirements of the admissibility of the sales of comparable properties were their size and general proximity to the State Capitol. It is the latter test that we find objectionable. Of course, for any of the properties to be comparable to the property in issue, we must assume that, on retrial, appellees will offer proof that the creek bottom property can be put to relatively the same

---

1. Bruner v. State, 391 S.W.2d 149 (Tex.Civ. App.1965, writ ref. n. r. e.); Melton v. State, 395 S.W.2d 426 (Tex.Civ.App.1965, writ ref. n. r. e.).

2. City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954).

uses as those for which the comparable properties were used, or are capable of being used. However, mere distance from the State Capitol in itself does not make property similar to that before us where it is located to the south or west of the Capitol while the subject property is located to the north and east of the Capitol. Generally, properties located south and west of the Capitol are situated in areas more conducive to general business activity than those to the north and east of the Capitol and, consequently, are more valuable. In addition, the sales offered were properties situated on paved and guttered streets, and the witness had to "adjust" the sales prices down to around $3.50 to $3.75 per square foot from prices as high as $12.31 per square foot. In this connection see City of Garland v. Joyce, 462 S.W.2d 86 (Tex.Civ.App.1970, writ ref. n.r.e.) where the court discusses the error of permitting testimony as to sales of tracts which obviously were not similar and in allowing a witness to adjust prices paid so as to permit such sales to be called comparable. Sales to be comparable to the general property in issue should be either in the same neighborhood or in a comparable neighborhood. See State v. Cloud Construction Co. 476 S.W.2d 395, 398 (Tex.Civ.App.1972, writ ref. n.r.e.) and annotation, 85 A.L.R. 1d 110.

## IV.

Appellees have a crosspoint wherein it is contended that the court abused its discretion in permitting the witness Frederick to testify to a percentage ratio he had arrived at which was formed by using sales of creek bed property in relationship to sales of nearby property not affected by the creek for the reason that in order to make these sales comparable to the subject tract, the witness was forced to make an adjustment. We overrule this point.

In view of another trial we deem it necessary to discuss this point.

Appellant's witness Frederick testified in the following language to the procedure which he employed in arriving at his opinion of the value of the subject tract:

"Q. Okay. Now, what sale along Waller Creek did you consider?

"A. Well, the study that I made, I studied the sales along the creek in this neighborhood all the way from 19th Street to 1st Street. Many of those sales were somewhat remote in time. Some of them are very current. But, the purpose of this study was not to use these sales as direct evidence of value, but to see what buyers and sellers in the market were doing, the difference that they were paying for properties that were affected by the creek and properties that were not affected by the creek, and merely to establish a ratio or percentage and not as a direct comparison to this property, because the sales were either more remote in time than I would like for them to be or that they were not in the same neighborhood. So, I just used these sales in this study to establish a percentage of what was being paid for properties that were affected by the creek as opposed to what was being paid for properties outside the creek."

■ Appellees contend that this testimony is subject to the same objection noted in City of Garland v. Joyce, cited above. We think not. In *City of Garland* the court proscribed the adjusting in money values, the sale of property *completely dissimilar* to that of the subject property and then using it as a comparable sale. Witness Frederick merely used a number of sales of property in the vicinity of Waller Creek, noted the price differential between that which buyers were paying for properties that were affected by the creek and properties that were not affected by the creek. Then he calculated an average of the difference paid for properties in each catego-

ry. Here a study was made of the sales properties situated in a *similar situs* to that of the subject property and those nearby properties not affected by the creek. It is our opinion that this evidence was admissible to show an average percentage of diminution in value of creek bed property vis-a-vis property in the same neighborhood above the floodline contours.

We reverse the judgment of the trial court and remand the case for a new trial.